UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OSCAR DAVID ALAS GARCIA, | Case No. 2:25-cv-02580-RFB-NJK |
| Petitioner, | **ORDER** |
| v. | |
| JOHN MATTOS, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner Oscar David Alas Garcia's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada Southern Detention Center (NSDC) in the custody of the Federal Respondents. For the following reasons, the Court grants the Petition.

I.   INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's reading of the Immigration and Nationality Act (INA) to authorize mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatory, no matter how long a noncitizen has resided in the country, and without

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in dozens of similar challenges. See Livia Vicharra v. Henkey, No. 2:25-cv-02336-RFB-EJY, 2025 WL 3564725, at *1 n.1 (D. Nev. Dec. 12, 2025) (collecting cases).

any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also Barco Mercado v. Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, become final, and granted declaratory relief to all class members, holding that they are being detained without a bond hearing unlawfully. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---

---

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

-, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioner is currently detained without the opportunity for release on bond in the custody of Federal Respondents at NSDC, pursuant to this new detention "policy." He asserts that his detention and the application of § 1225(b)(2) to him is unlawful under the INA, that § 1226(a) properly governs his detention and that his continued detention violates his procedural and substantive due process rights. He seeks a writ of habeas corpus requiring that he be released unless Respondents provide him with a constitutionally-adequate bond hearing under § 1226(a).

For the reasons set forth below, the Court finds that Petitioner's detention is unlawful under the INA and violates his due process rights.[4] The Court thus grants the Petition and orders Respondents to provide Petitioner a constitutionally adequate bond hearing by **January 16, 2026,** or release him.

## II.     PROCEDURAL HISTORY

On December 23, 2025, Petitioner Oscar David Alas Garcia filed his Petition for Writ of Habeas Corpus against Respondents John Mattos, in his official capacity as Warden of NSDC; Michael Bernacke, in his official capacity as the Director of the Salt Lake City Field Office of ICE's Enforcement and Removal Operations Division; Pamela Bondi, in her official capacity as Attorney General of the United States; and Kristi Noem, in her official capacity as Secretary of DHS. See ECF No. 1. This case was initially assigned to the Honorable Judge Anne. R. Traum, but on December 31, 2025, was transferred to the undersigned judge as related to a pending putative class action. See ECF No. 3.

On December 31, 2025, this Court ordered Petitioner supplement the Petition with an attorney verification pursuant to 28 U.S.C. § 2242 and ordered Respondents to show cause why

---

[4] Outside of the Court's own analysis, the Court also recognizes that Petitioner is a member of the class certified in Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), and that the District Court's Order in Bautista has recently become final, extending declaratory relief to the class. See Bautista, 2025 WL 3713987, at *32.

the Writ should not be granted pursuant to 28 U.S.C. § 2241. See ECF Nos. 5-6. On January 2, 2026, counsel for Respondents filed their Notice of appearance and a stipulation for extension of time, which the Court granted. See ECF Nos. 8-10. Respondents accordingly filed their Return on January 9, 2026, and Petitioner filed a Traverse on January 13, 2026. See ECF Nos. 12-13.

The Court's Order follows.

### III. BACKGROUND

#### A. Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's new statutory reading and mass detention "policy," set forth in its ruling in Escobar Salgado. 2025 WL 3205356, at *2-6.

#### B. Petitioner Oscar David Alas Garcia

The Court makes the following findings as to Petitioner. Petitioner is a native and citizen of El Salvador who entered the United States without inspection on April 13, 2012, and he has resided in the United States for the over 13 years since. See ECF No. 1 at 4; ECF No. 12 at 9. He is currently detained by Respondents at Southern Nevada Detention Center (NSDC) after having been arrested by ICE on September 5, 2025, in Salt Lake City when he showed up for a scheduled immigration check-in appointment. See id.

Petitioner has been in ongoing removal proceedings since 2012, after he was charged by DHS as removable pursuant to section 1182(a)(7)(A)(i)(I) of the INA and processed for Expedited Removal. See ECF No. 12-2 at 3. Most recently, Petitioner filed a Petition for Review with the Ninth Circuit Court of Appeals, seeking a stay of removal (which was granted) and review of his removal proceedings after the Board of Immigration Appeals (BIA) dismissed his appeal;[5] the BIA appeal and dismissal concerned Petitioner's order of removal and removal proceedings, particularly the prior denial of Petitioner's applications for cancellation of removal, asylum, and

---

[5] The Court notes that the Ninth Circuit has stayed Petitioner's removal for the pendency of the review and that parties do not dispute that Petitioner remains in the "pre-removal" period accordingly. See 8 U.S.C. 1231(a)(1)(B)(ii).

1  withholding of removal. See ECF Nos. 12-4, 12-5.

2  On September 5, 2025, Petitioner reported to Salt Lake City ICE Enforcement and Removal Operations (ERO) office for a scheduled office visit and was arrested on arrival. See ECF No. 12-6 at 3. The Salt Lake City ERO transferred Petitioner to NSDC that same day. See id. Petitioner has not been provided a bond hearing to-date and is being held in mandatory detention. See ECF No. 1 at 2.

Prior to his arrest, Petitioner lived in a shared household with his spouse and their three children in Las Vegas, Nevada, and worked as a self-employed contractor. See id. He has no criminal history. See ECF No. 12-6 at 4.

### IV.  LEGAL STANDARDS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (per curiam) (citations omitted). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and

receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## V. DISCUSSION

### A. Jurisdiction

The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted).

### B. Statutory Question

Petitioner challenges the government's new interpretation of the INA, and his detention thereunder, as unlawful. Petitioner argues this interpretation of the statutory scheme of §§ 1225 and 1226 is flawed, contradicting both the statutory framework and the decades of agency practice applying § 1226(a) to people like Petitioner. This Court agrees with Petitioner and fully incorporates by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

Petitioner entered the United States without inspection in 2012 and was arrested and detained by ICE in Las Vegas, over a decade later, far from any port of entry. Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. Escobar Salgado, 2025 WL 3205356, at *10-22.

### C. Due Process

Petitioner also challenges his ongoing detention without the opportunity for release on bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth

Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge on this basis. This Court incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the opportunity for release on bond in violation of his procedural and substantive due process rights.

1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted). Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of

1   removal, had already been afforded an individualized bond hearing, and had additional process
2   available to him through a further bonding hearing before an IJ upon a showing of materially
3   changed circumstances).

4   Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest
5   through the procedures used, and the probable value, if any, of additional procedures." Mathews,
6   424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his
7   detention pending the conclusion of his removal proceedings without the opportunity for release
8   on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency
9   officials have sole, unguided, and unreviewable discretion to detain Petitioner without any
10  individualized showing of why his detention is warranted, nor any process for Petitioner to
11  challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this
12  lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond
13  hearing for a petitioner prior to Hurtado and found that the government had not established a
14  justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No.
15  2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem,
16  No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Moreover, given that
17  Petitioner has significant ties to the country, specifically as it relates to his family and business in
18  Las Vegas, and because Respondents have not asserted he is dangerous or a flight risk, the Court
19  finds that he is being arbitrarily and unjustifiably deprived of his liberty.

20  The additional procedures afforded under § 1226(a), including an *individualized*,
21  *constitutionally adequate* custody redetermination by an immigration judge, *i.e.*, a bond hearing,
22  substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those
23  procedures require the government to establish that Petitioner presents a flight risk or danger to
24  the community. This would account for the constitutional requirement that "once the flight risk
25  justification evaporates, the only special circumstance [ ] present is the alien's removable status
26  itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. An
27  adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner
28  could seek additional custody redeterminations based on changed circumstances, such that the

1  outcome of a bond hearing would be subject to "numerous levels of review, each offering
2  [Petitioner] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at
3  1210 (finding the bond hearing procedures available through the implementing regulations of §
4  1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted).
5  As such, the second Mathews factor also weighs heavily in favor of granting Petitioner the
6  procedural protections under § 1226(a).

7  The third and final Mathews factor considers the "Government's interest, including the
8  function involved and the fiscal and administrative burdens that the additional or substitute
9  procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the
10 government's interests in enforcing immigration laws, including "protecting the public from
11 dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest
12 order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the
13 individualized determination by an immigration judge, based on a review of evidence presented
14 by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing
15 removal proceedings, under existing, well-established procedures. In failing to articulate any
16 individualized reason why detaining Petitioner is necessary to enforce immigration law, the
17 question arises "whether the detention is not to facilitate deportation, or to protect against risk of
18 flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33
19 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a
20 person's liberty.

21 Further, the Court finds that limiting the use of detention to only those noncitizens who are
22 dangerous or a flight risk through existing bond procedures serves the government and public's
23 interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. See
24 Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the
25 public of immigration detention are staggering: $158 each day per detainee, amounting to a total
26 daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17
27 cents and 17 dollars each day per person.").

28 In sum, the Court finds the Mathews factors weigh heavily in factor of Petitioner, and

therefore, his detention without the opportunity for release on bond violates his procedural due process rights.

### 2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted absolutely no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

### D. Scope of Relief

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

Here, Petitioner faces the specific harm of being detained without a constitutionally adequate bond hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing be conducted by **January 16, 2026**. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

### E. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Any fee petition should be filed within the deadlines and consistent with the requirements set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

///

///

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **January 16, 2026**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Thus, in the event that bond is granted, the Court **ORDERS** that Respondents are enjoined from invoking the automatic stay to continue Petitioner's detention, as the Court has already found the automatic stay unconstitutional and adopts that finding here. See Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sept. 5, 2025).

In the event that bond is granted, Respondents are **ORDERED** to immediately release Petitioner. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded until **March 1, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **January 16, 2026**, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **January 21, 2026**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**DATED:** January 14, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**